```
 1                UNITED STATES DISTRICT COURT

 2             WESTERN DISTRICT OF WASHINGTON AT SEATTLE
    _____
 3                                  )
    In re the Application of:       ) CV23-01655-RAJ
 4                                  )
    RYAN NEIL MORRISON,             ) SEATTLE, WASHINGTON
 5                                  )
                   Petitioner,      ) April 2, 2024 -
 6                                  ) 9:00 A.M.
    v.                              )
 7                                  )
    FANY DAMIAN CHANG,              ) EVIDENTIARY HEARING -
 8                                  ) Day 3 of 3
                   Respondent.      )
 9
    _____
10
                 VERBATIM REPORT OF PROCEEDINGS
11          BEFORE THE HONORABLE RICHARD A. JONES
                 UNITED STATES DISTRICT JUDGE
12  _____

13

14  APPEARANCES:

15  For the Petitioner:    Robert Carl Bennett
                           Michael Bungi & Associates
16                         11300 Roosevelt Way N.E.
                           Suite 300
17                         Seattle, WA 98109

18

19  For the Respondent:    Fany Damian Chang Morrison
                           Self-Represented Litigant
20                         P.O. Box 702
                           Langley, WA 98260
21

22

23

24

25
```

**Proceedings stenographically reported and transcript produced with computer-aided technology**

Nickoline Drury, RMR, CRR - Federal Court Reporter - (206)370-8508 - 700 Stewart Street, Suite 17205, Seattle, WA  98101

| | |
|---|---|
| 1 | THE COURT:  Good morning.  Please be seated. |
| 2 | THE CLERK:  We're resuming our evidentiary hearing in |
| 3 | the matter of Morrison versus Chang, Cause No. C23-1655, assigned |
| 4 | to this court. |
| 5 | If counsel could please rise -- or counsel and our pro se |
| 6 | party could please rise and make your appearances. |
| 7 | MR. BENNETT:  Good morning, Your Honor.  My name is |
| 8 | Robert Bennett.  I represent the Petitioner Ryan Morrison, who |
| 9 | is -- |
| 10 | THE COURT:  Good morning to both of you. |
| 11 | MR. BENNETT:  -- sitting to my left. |
| 12 | THE COURT:  Good morning. |
| 13 | MS. CHANG MORRISON:  Good morning.  My name is Fany |
| 14 | Morrison, and I am representing myself. |
| 15 | THE COURT:  Good morning. |
| 16 | I believe we completed the last part of the testimony.  It |
| 17 | was the opportunity for the petitioner to provide redirect |
| 18 | testimony. |
| 19 | Counsel, have your witness retake the witness stand. |
| 20 | Sir, you are still under oath. |
| 21 | You may inquire. |
| 22 | MR. BENNETT:  I believe Ms. Morrison was asking some |
| 23 | questions on, I guess, cross. |
| 24 | THE COURT:  Yes, please continue. |
| 25 | MS. CHANG MORRISON:  Your Honor, I am done with my |

| | |
|---|---|
| 1 | questions, so we can continue. |
| 2 | THE COURT:  Okay.  That's what I thought -- |
| 3 | MS. CHANG MORRISON:  Thank you. |
| 4 | THE COURT:  -- happened when we finished.  Okay. |
| 5 | MS. CHANG MORRISON:  Thank you. |
| 6 | THE COURT:  If your examination is complete, then |
| 7 | redirect, counsel. |
| 8 | MR. BENNETT:  I don't have any further questions at this |
| 9 | time, Your Honor. |
| 10 | THE COURT:  All right.  Then the last part of this |
| 11 | process -- |
| 12 | Sir, you may step down.  You may take your seat. |
| 13 | MR. MORRISON:  Thank you. |
| 14 | THE COURT:  The last portion of this process is closing |
| 15 | remarks. |
| 16 | Counsel for the petitioner, this is your opportunity to make |
| 17 | your closing argument to the court. |
| 18 | MR. BENNETT:  All right.  Thank you, Your Honor. |
| 19 | So the evidence has supported the prima facie elements of my |
| 20 | client's petition to have the child removed to Mexico. |
| 21 | Prior to the child's removal from Mexico, the child was |
| 22 | habitually a resident in Mexico.  Mr. Morrison was exercising his |
| 23 | rights under the Mexican law, which is the law that applies to |
| 24 | whether or not the custody rights were being exercised, and |
| 25 | Mr. Morrison had custody rights under Mexican law.  The child is |

```
 1   under the age of 18 -- or, excuse me, 16 years, and the petition
 2   was filed within one year of the wrongful removal and one year of
 3   the wrongful retention.  So with respect to habitual residence,
 4   the child's habitual residence can't be changed with wrongful
 5   retention.
 6       So the parties exhibited, in 2020 and 2021, that they had
 7   no intent to permanently live on Whidbey Island.  In 2020,
 8   Mr. Morrison sold the house he owned, October 2020, and then, in
 9   November 2021, the family and he moved to Buena Vista, Mexico, to
10   live in a house that he had purchased in March of 2019 and spent
11   significant funds, I think he testified 200,000, to remodel and
12   renovate.
13       Ms. Morrison's parents lived on the first floor of that
14   house, and so you had a three-generation -- a multigenerational
15   situation going on in Buena Vista.  The child speaks Spanish,
16   both parents speak Spanish with the child at home, which
17   indicates the child is acclimated to Mexico.
18       And the house, Mr. Morrison presented photos of the house.
19   The house is a very nice house, and it seems, for all intents and
20   purposes, the evidence shows that the family was happy living
21   there.
22       In May of 2022, the parties and the child took a road trip to
23   go house-hunting.  They went to several states in the West.
24   They went to Island County, Whidbey Island, to visit relatives in
25   June.  The evidence shows that it was intended to be a two-week
```

1    visit or a very short visit, and there's evidence directly on
2    point.  Ms. Morrison's text message to Mr. Morrison's sister
3    saying that, hey, we're going to be here for a couple weeks, and
4    there's Ms. Morrison's e-mail to Caitlin Voss, who is the
5    director of the local day care.  Ms. Morrison is indicating to
6    Ms. Voss that she was only going to stay for the summer.  This is
7    after Ms. Voss had offered her her old job back.  Mr. Morrison,
8    not only in his testimony but also in the evidence of his
9    actions, always maintained the intent to return to Mexico with
10   the child R.E.M.
11        It became clear over the next coming months that Ms. Morrison
12   formed a different intent.  In September, she took her job at the
13   day care center back.  In November, she refused to allow
14   Mr. Morrison to travel back to Mexico with the child, despite
15   that he had purchased the tickets already.  In December, she
16   filed a petition for dissolution of the parties' marriage in
17   Island County.  None of these actions are actions that
18   Mr. Morrison agreed with.
19        Ms. Morrison was forum shopping.  At some point, she decided
20   that she wanted to get divorced in Washington State instead of
21   Mexico and have Washington State law apply to where the child
22   should live and custody determinations and all of those issues.
23        So in December of 2022, Ms. Morrison says that she gave
24   papers to the neighbor and the neighbor came over to
25   Mr. Morrison's mother's house and handed Mr. Morrison's mother

1    the papers, perhaps included within those papers was an automatic
2    temporary restraining order that the court automatically enters
3    when a new divorce case is filed.  Mr. Morrison says he never got
4    those papers.  Washington law says you cannot effect valid
5    substitute service on a party unless you do it at the party's
6    usual place of abode, on someone who is then resident therein.
7    Mr. Morrison's usual place of abode was Buena Vista, Mexico.
8         January 2023, Mr. Morrison traveled with the child to Mexico.
9    He had no notice of the court's automatic temporary restraining
10   order, and so the order didn't apply to him.  So that doesn't
11   count as a wrongful removal.  Plus, we're applying Mexican
12   custody law.  He had ever right to travel with his child to
13   Mexico, and so that removal is not unlawful.
14        Ms. Morrison contacted authorities, local authorities, the
15   FBI, sought assistance to obtain the return of the child.
16   Ms. Morrison did not follow that process to its conclusion;
17   instead, she engaged in self-help.  She traveled to Mexico and,
18   on March 2nd, went to the child's school, physically took custody
19   of the child from the child's teacher, and then forcibly removed
20   the child from Mexico back to Washington State.
21        In October, I think October 31st, 2023, Mr. Morrison filed
22   this petition seeking the return of the child, and here we are,
23   after trial and closing arguments, asking the court to order that
24   the child be returned to Mexico.
25        Ms. Morrison has filed a divorce case in Island County, but

1  that divorce case has serious problems.  It has a UCCJEA problem
2  because wrongful retention does not count towards the months that
3  a child needs to live in Washington State in order for the court
4  to exercise subject-matter jurisdiction.  The child did not live
5  in Washington State for six months before the divorce petition
6  was filed under circumstances that the court would, or should,
7  say that it has subject-matter jurisdiction, because the months
8  that the parties were away from Buena Vista, Mexico, temporarily
9  traveling count towards Buena Vista; they don't count to
10 Washington State.
11     So that case has subject-matter jurisdiction problems, it has
12 a choice-of-law problem because the Mexican divorce -- or, excuse
13 me, the Mexican marriage was something -- well, a particular --
14 under Mexican law, it was a particular kind of marriage, whereby
15 the parties' assets are kept separate.  We might have a
16 choice-of-law problem in Island County if that issue is ever
17 raised.
18     The reason I'm bringing this up is forum shopping.  The
19 problem with forum shopping is that it's going to create these
20 types of issues of law.  Ms. Morrison decided she wanted to end
21 her marriage in Island County and have Island County Superior
22 Court make custody determinations over the children, and this is
23 where the legal problems come from.
24     The Hague Convention is also designed to prevent forum
25 shopping.  It's designed to not allow a parent, while she's on a

1    trip with the other parent, to decide to try and create a new
2    habitual residence for the child, away from the child's former
3    habitual residence.  The Hague Convention is going to ensure that
4    the child is returned to the child's habitual place of residence
5    if it is a foreign country, which it was, it was Mexico.
6         The parties have done enough to show that they had a settled
7    purpose to remain in Mexico.  Again, purchased the house, had
8    family living in the house, family members coming to the house
9    regularly to visit, large investments in the house, and also the
10   local community, the local language.  The child was acclimated to
11   Mexico and will be acclimated to Mexico upon his return.
12        And so we would ask the court to grant the petition.
13             THE COURT:  Thank you, counsel.
14        Ms. Morrison, closing argument.
15             MS. CHANG MORRISON:  Your Honor, first, I would like to
16   say thank you to this court for listening to my testimony.  It
17   meant a lot to me to be heard.
18        Ryan's petition should be denied.  The evidence shows that
19   there was not a wrongful removal or retention of R.E.M. for my
20   part, not in the summer of 2022, or in March 2023, when I had to
21   go to Mexico and bring him back to Langley, which is our home.
22        Mr. Morrison asked me to drop off legal paperwork before he
23   would bring E▓▓▓▓ back.  I think Mr. Morrison has been making
24   bad choices and not including E▓▓▓▓'s best interests in
25   consideration.

| | |
|---|---|
| 1 | However, removal of our son by Mr. Morrison on January 3rd, |
| 2 | 2023, was wrong to the court's restraining order from |
| 3 | December 28th, 2022.  This removal was wrong, as I was exercising |
| 4 | my legal rights to E███████. |
| 5 | Mexico has never granted custody of E███████.  On |
| 6 | January 2024, Mexico gave its final ruling for our divorce in |
| 7 | Mexico, the divorce that Ryan filed after I filed the one on |
| 8 | Island County.  Mexico is incompetent by declination according to |
| 9 | territory, and Mexico declared competence in favor of Honorable |
| 10 | Judge Carolyn Cliff, ascribing Island County, Washington. |
| 11 | During the time Ryan had our son in Mexico, Ryan denied me |
| 12 | videos visits with our son.  Ryan said I was making E███████ feel |
| 13 | sad as I was talking about our house with horses in Freeland, his |
| 14 | friend at South Whidbey Children's Center where he was attending, |
| 15 | I was talking about his teachers and the snow. |
| 16 | The second contempt order from January 2023, establishing |
| 17 | R.E.M.'s habitual residence in Island County -- R.E.M. was living |
| 18 | in Freeland, Washington with me when Mr. Morrison took him to |
| 19 | Mexico without my knowledge or permission -- the order asked to |
| 20 | immediately bring R.E.M. back to my custody.  Mr. Morrison did |
| 21 | not bring him back, even when his safety was compromised.  Ryan |
| 22 | even wanted to sell the house in Buena Vista and move to Costa |
| 23 | Rica. |
| 24 | If today's ruling does not meet Mr. Morrison's expectations, |
| 25 | I am concerned about his reaction.  The evidence shows that |

1    Mr. Morrison retaliates one way or another.
2        With today's ruling, I will be compliant.  We will be able to
3    move forward with our divorce, and, hopefully, we will find the
4    peace that I need for myself and my family.
5        I pray for all the families that have to go through a
6    situation like ours.  There are no words that can explain the
7    pain.  I hope they find love and support in their communities, as
8    I have found in mine.  Together we are stronger.  I will always
9    be grateful.
10       It takes a village to raise a child.  Hopefully, a village by
11   the sea on Whidbey island will see R.E.M. and D.D.M. grow up and
12   thrive.  I will do my best to raise my kids with good values,
13   including the importance of being honest.  I hope that they can
14   be a good addition to this community.
15       Ryan's petition should be denied.  Thank you.
16            THE COURT:  All right.  Thank you.
17       Rebuttal argument?
18            MR. BENNETT:  Yeah, just quickly about wrongful
19   retention.
20       Wrongful retention occurs when one parent knows that the
21   other parent is going to refuse to return the child to the
22   habitual abode.  This became apparent in November 2022, when
23   Ms. Morrison refused to allow Mr. Morrison to travel with R.E.M.
24   back home.  From that point forward, we also have a basis to ask
25   the court under the Hague Convention to order the return of the

1  child.

2  And, again, Ms. Morrison can't create a situation whereby she
3  creates a new habitual residence of the child under wrongful
4  circumstances.  It's wrongful to retain the child in Island
5  County when the other parent says we need to take the child and
6  we need to go back to Mexico where we live, where the child's
7  habitual abode is.  Retention after that point is wrongful.  And
8  so we would ask the court to grant the petition.

9  Regarding the Mexican case, the Mexican divorce case, my
10 client testified that the court assumed Judge Cliff was applying
11 Mexican law on the basis of jurisdiction.  The court will set
12 jurisdiction in Mexico based on the last conjugal address, which
13 is Buena Vista, Mexico.  The court assumed that Judge Cliff must
14 have found another conjugal address for the parties and assumed
15 that she's proceeding in Island County according to Mexican law.

16 But the basis for jurisdiction over a marriage in Washington
17 State is it's in rem.  The court can divorce parties who don't
18 live in the same state as long as one party does live in
19 Washington State.  The basis for personal jurisdiction is
20 long-arm jurisdiction, a very different personal -- jurisdiction.
21 So that's residing while married in Washington State or may have
22 conceived a child in Washington State.  So those are the
23 jurisdictional bases that afford the Island County Superior Court
24 personal jurisdiction over Mr. Morrison.  Then there's
25 subject-matter jurisdiction, which I have addressed already.

1    That's covered by the UCCJEA.  So the court needs to bring all
2    these types of jurisdiction together in a divorce case to be able
3    to act on all issues.
4        And I do note, the court has no jurisdiction to distribute
5    the Buena Vista house because that's located in Mexico.  So the
6    parties' principal asset, if they were to proceed in Washington
7    State, wouldn't be distributed, so ...  But, again, I'm arguing
8    that those aspects of the divorce case in Washington State pop
9    up, they become apparent when there's forum shopping going on.
10   If there's no forum shopping going on, those issues don't ever
11   arise.  And those issues have arisen here because Ms. Morrison
12   decided that she wanted to have her divorce case decided here and
13   custody determinations about the parties' child made here, and
14   that decision was hers to make and hers alone.  And it's the
15   court's decision to apply the Hague Convention and determine
16   whether or not the child should be returned to his habitual
17   residence, which is Buena Vista, Mexico, because the father has
18   custody rights under Mexican law.  I think it's patria potestad.
19       He was exercising those custody rights at the time of the
20   wrongful retention and the wrongful removal, the child is under
21   the age of 16, and the petition was timely filed.
22       Thank you, Your Honor.
23            THE COURT:  Thank you.
24       All right.  This is what the court is going to do.  We're
25   going to take a 15-minute recess.  I will direct that the parties

1  return back, and I'm going to give you a preliminary ruling on
2  the outcome of this matter, and then the court will thereafter
3  issue a written order with findings so that the parties have a
4  clear understanding.  So this morning will just be a summary
5  determination so that you can walk out of the courthouse and have
6  a clear understanding of exactly what the habitual residence will
7  be.
8         We will be in recess.  We will resume in 15 minutes.
9                              (Recessed.)
10         THE COURT:  Good morning, again.  Please be seated.
11      As the parties will recall, at the outset, the court
12  identified and explained what the expectations and requirements
13  were going to be for the petitioner to establish the basis for
14  his claim.
15      A few words before the court gets into the detail of the
16  order.  Again, a written order will be forthcoming.
17      The only issue before this court is habitual residence, not
18  custody.  And oftentimes during the course of this proceeding,
19  the parties were engaging in testimony and evidence as if this
20  court were to establish custody as opposed to habitual residence.
21  The court wishes to affirm that it's unfortunate the parties are
22  at this point and they've gotten into an engagement, with this
23  level of vitriol between the two parties, to the point that
24  there's essentially a tug-of-war over this child's life and
25  existence.

1       The court would note that during the course of the hearing,
2   the court was quite liberal in its rulings on the admissibility
3   of evidence.  The primary purpose of those determinations were to
4   give the parties the opportunity to present their case and fully
5   be heard, and this court gave the parties that opportunity.  In
6   that regard, there was testimony before this court, some of which
7   was not necessarily relevant to this proceeding, but,
8   nonetheless, it was admitted, and it was done in a fair and
9   equitable manner so that both parties could present their case in
10  full.
11      Now, one thing I hope the parties recognize is that as you go
12  through a divorce, as you go through this type of proceeding,
13  you're establishing a very detailed record and you're making a
14  number of scandalous allegations against each parent.  I hope
15  that you understand, at some point in time, R.E.M. will not be
16  four years old or five years old; at some point in time, R.E.M.
17  will be a young adult, and if he desires, he will have the
18  opportunity to go and look and read the details of all the
19  allegations that you have made against each other.  He will have
20  the opportunity at that point in time to make his own assessment
21  of his parents and where things were at the time that they were
22  wrestling and tugging at control and custody of his life.
23      So I hope that you go forward -- and this isn't necessarily
24  an order that you have to follow -- but I hope that you go
25  forward and you appreciate the fact that the record that you have

1   made will always be available for R.E.M. and also for any other
2   children to read, if they so desire, if you have further
3   responsibility with children.
4       Now, the court wants to go through the primary reasons for
5   the ruling that I will make, and there's several factors that
6   need to be taken into consideration.  One of the factors is that,
7   for a period of time, the parties were in Mexico primarily due to
8   the limitations of travel because of COVID.  That has been a
9   factor for this court.
10      The court will also note that there were, and have been,
11  timelines which have been identified in this case, and there's
12  things which do not appear to be contested.  And one of the
13  established requirements is that the petitioner has to be the
14  father of the child.  That's not in dispute.  The court would so
15  find.  Also, was the petitioner exercising his rights of custody
16  at the time, and the court will make that determination.
17      But the timeline that the court considers is the timelines of
18  R.E.M.'s whereabouts, and that's identified in Petitioner's
19  Exhibit 27 and Respondent's Exhibit 214.  Now, based on these
20  exhibits and the parties' testimony, it appears that R.E.M. was
21  born in Washington and resided in the United States from
22  June 2019 to September 2019; Mexico from August 2019 to
23  June 2020; the United States from July 2020 to November 2021;
24  Mexico from December 2021 to May 2022; United States from
25  May 2022 to January 2023; Mexico from January '23 to March 2023;

1  and the United States from March 2023 to the present.

2  Now, the court would note that the petitioner presented
3  evidence that when the parties came to Washington in May of 2022,
4  they may have intended to stay for the summer.  That's
5  Petitioner's Exhibit 19.  However, the respondent has presented
6  evidence that during that same time frame, the parties intended
7  to build a home on a lot in Washington or potentially look for
8  other homes within the United States in 2022.

9  Further, the evidence before the court of R.E.M.'s contacts
10  within the country, such as doctors' appointments and school
11  enrollment, reflect R.E.M.'s contact within Washington, such as
12  his attending school in Whidbey Island, Washington.

13  The court also notes that respondent has testified to
14  coercion on the part of petitioner, for example, holding her
15  older child and R.E.M.'s travel documents, school documents, and
16  vaccination records.  Respondent has testified that petitioner's
17  actions reflected instability, and petitioner's mother testified
18  that she provided the number to a crisis hotline to respondent in
19  relation to petitioner's behavior.

20  The court also notes the Island County Superior Court
21  proceedings and the temporary restraining order entered by that
22  court on December 28, 2022, an order that petitioner did not
23  follow.  Significantly, petitioner did not seek to abide by the
24  court order, even after he concedes he received notice through
25  his attorney.

1       The court would direct the parties to, and must consider, the
2   acclimatization experienced by R.E.M.  In the Ninth Circuit,
3   acclimatization has occurred when a child has no habitually
4   established residence elsewhere and the child may become
5   habitually resident even in a place where it was intended to live
6   for only a short period of time.  The court will direct the
7   parties to Mozes, M-o-s -- strike that, M-o-z-e-s, v. Mozes,
8   M-o-z-e-s, found at 239 F.3d 1067, specifically page 1082, which
9   is the Ninth Circuit decision, 2001.
10      Relying upon that authority, R.E.M.'s prior residence in
11  Mexico was abandoned, and in the absence of a shared parental
12  intent, which is the case here, a prior habitual residence may be
13  supplanted, where objective facts point unequivocally to R.E.M.'s
14  ordinary residence being in Washington.  Such is the situation
15  here, where the court can say with confidence that the child's
16  relative attachments to the two countries, the United States and
17  Mexico, have changed to the point where returning to the original
18  forum would now be tantamount to taking the child out of the
19  family and social environment in which its life developed.
20      The court holds that the child's habitual residence shifted
21  during the summer of 2022, and the evidence before the court --
22  the child's enrollment in school, respondent's employment,
23  petitioner's search for homes in Washington and neighboring
24  states -- supports the finding of such.
25      This court finds that R.E.M.'s retention in Washington in the

1  summer of 2022 was not wrongful.

2      Further, this court finds that respondent's removal of R.E.M.
3  from Mexico in March 2023 did not constitute wrongful removal
4  under the Hague Convention because petitioner did not have a
5  right of custody at that time.

6      For these reasons, the court finds that the determination
7  requested by the petitioner must be denied.  The habitual
8  residence will remain with the mother.

9      That will be the finding of the court.  As indicated, a
10 written order will be issued that will track what the court's
11 findings have been.

12     This matter is concluded.  We will be in recess.

13         THE CLERK:  Please rise.

14         THE COURT:  The parties are excused.

15                 (Adjourned.)

16              C E R T I F I C A T E

17

18   I, Nickoline M. Drury, RMR, CRR, Court Reporter for the
19 United States District Court in the Western District of
20 Washington at Seattle, do certify that the foregoing is a correct
21 transcript, to the best of my ability, from the record of
22 proceedings in the above-entitled matter.

23

24                 /s/ Nickoline Drury
25                 Nickoline Drury